COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


RICHARD KENNETH WHEELER
                                    MEMORANDUM OPINION* BY
v.  Record No. 0820-97-2          JUDGE MARVIN F. COLE
                                        MARCH 24, 1998
FAYE POND WHEELER

              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                        Timothy J. Hauler, Judge

          Richard P. Kruegler (Durrette, Irvin &
          Bradshaw, on briefs), for appellant.

          William F. Etherington (Beale, Balfour,
          Davidson & Etherington, P.C., on brief), for
          appellee.


     Richard Kenneth Wheeler (husband) appeals the decision of

the circuit court ordering him to continue to pay Faye Pond

Wheeler (wife) monthly spousal support of $2,000.  Husband

contends that the trial court erred in:  (1) deciding issues

previously ruled upon by the circuit court and this Court; (2)

interpreting the parties' written and oral agreements; (3)

holding that wife was entitled to monthly spousal support of

$2,000 from February 1988 until the parties negotiated otherwise;

and (4) awarding husband only a portion of his attorney's fees.

We find that the trial court did not rule on previously decided

issues.  We also find that the trial court erred in concluding

that the parties' 1988 oral agreement that husband would pay wife

_____

        *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

$2,000 per month in spousal support modified their written agreement.  We further find that, under the parties' written agreement, spousal support payments ceased when husband reached age sixty and no longer received his draw from his former law firm, subject to renegotiation.  We affirm the court's award of attorney's fees to husband.

## Background

Husband and wife were divorced in 1984.  The final decree incorporated the parties' property settlement agreement.  In pertinent part, the agreement provided as follows:

3.   PERIODIC SPOUSAL SUPPORT

> Husband shall pay to Wife annually $42,000.00 per year so long as they shall both live and she shall remain unmarried, by paying $3,500.00 on the first day of each month commencing with the month of February, 1984.  However, Husband shall pay initially to Wife $3,225.00 as periodic support.

> If Husband's draw, which is now $9,000.00 per month is increased, he shall pay to Wife 25% of such increase . . . .

> If there is a reduction in Husband's draw, not due to his voluntary act, choice or decision, the periodic spousal support shall be proportionately reduced . . . .

> Upon Husband attaining the age of Sixty (60) years and retiring from his professional practice or employment, if spousal support has not been terminated earlier by force of the other provisions of this Agreement, the parties will negotiate in good faith, based upon the circumstances and conditions at the time, to fix the amount of spousal support the Wife is entitled to, if any.

Husband paid wife monthly spousal support pursuant to the

2

agreement until January 1988, when his monthly draw from his law firm was reduced from $10,417 to $4,000. Husband agreed to pay spousal support of $2,000 a month, although he contended that he was required to pay approximately $700 per month pursuant to the formula set out in their written agreement. By petition filed in 1992, wife sought to recover a support arrearage. In December 1992, the trial court ruled in its opinion letter that wife was estopped from seeking an arrearage. The court also ruled that the term "draw" used by the parties in their agreement referred only to husband's draw from his employment with Hunton & Williams and did not refer to all income he earned as an attorney. The trial court also awarded husband his attorney's fees and costs. After the court issued its letter ruling in December 1992, husband reduced his monthly spousal support payments to $700 pursuant to his interpretation of the formula set out in the parties' agreement. The final order was entered in March 1993.

Wife appealed the circuit court's March 1993 order, which was affirmed by this Court. See Wheeler v. Wheeler, Record No. 0722-93-2 (Va. Ct. App. July 5, 1994). Neither party appealed this Court's decision. No appellate attorney's fees were awarded to husband.

Following remand, husband filed a motion seeking attorney's fees and costs. In a December 1994 hearing, the trial court indicated orally that it would not rule on the wife's allegation of spousal support arrearage because wife had not properly

3

presented the matter to the court. In January 1995, wife filed a petition seeking an arrearage of $1,300 because of husband's unilateral reduction of support payments to $700 per month in January 1993. The matter was heard by a different trial judge because the first trial judge had died in the interim. Based upon oral argument, the record, and transcripts of the previous hearings, the judge found that husband was obligated to pay wife $2,000 in monthly spousal support from the time of the oral modification in February 1988 until the amount was renegotiated; that there was insufficient evidence that wife agreed to forego litigation in exchange for a greater spousal support payment; and that husband was entitled to attorney's fees and costs incurred only through March 1993. Husband appeals.

<u>Previously Decided Issues</u>

As noted above, this matter was previously before the Court of Appeals on wife's appeal of the circuit court's March 15, 1993 order. Neither party appealed this Court's decision affirming the circuit court's order. Under the doctrine of the law of the case, the parties are barred from relitigating matters necessarily decided in the prior appeal or which could have been appealed at that time but which were not. "'Where there have been two appeals in the same case, between the same parties and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal.'" <u>Kaufman v. Kaufman</u>, 12 Va. App. 1200, 1208, 409 S.E.2d 1, 6 (1991) (quoting <u>Steinman v.</u>

4

Clinchfield Coal Corp., 121 Va. 611, 620-21, 93 S.E. 684, 687 (1917)).

As such, in accordance with the findings set out in our previous opinion, the parties are bound by our previous determination that "draw," as used in their written agreement, meant husband's monthly income from his former law firm of Hunton & Williams, and did not mean husband's overall salary from the practice of law. We also determined that wife was equitably estopped from recovering any alleged arrearage resulting from the reduction of support to $2,000 per month in 1988.

Husband contends that the parties' written agreement, as modified by their oral agreement, rested on an agreement to forego litigation, that wife breached that agreement in May 1992 when she filed her petition seeking a support arrearage, and that the trial court so ruled in its March 15, 1993 order when it denied wife's petition to rehear. Nowhere in the record is there evidence to support husband's assertion that the trial judge ruled that wife's action to enforce the terms of the agreement breached an agreement to forego litigation. Although wife's agreement to forego litigation may explain husband's willingness to pay more than the support amount required under the parties' written agreement, the record does not demonstrate that the trial judge ruled in March 1993 that the parties agreed to forego litigation.

Moreover, no order but the one from which husband now

5

appeals addressed husband's January 1993 reduction of spousal support to $700 per month. "A court of record speaks only through its written orders," Hill v. Hill, 227 Va. 569, 578, 318 S.E.2d 292, 297 (1984), and remarks made from the bench which are not subsequently reduced to a written order have no effect. Nevertheless, we note the following exchange between husband's counsel and the former trial judge in the December 6, 1994 hearing:

> [COUNSEL]: On the issue of arrearages, are you finding that it's the law of the case that none exists.
>
> THE COURT: At the present time?
>
> [COUNSEL]: Yes.
>
> THE COURT: No, sir. I don't think he brought a suit properly for that ruling, and I'm not going to rule.

While the parties adjudicated the amount of spousal support due prior to May 1992 when wife was found to be equitably estopped from seeking an arrearage as of that date, the court did not decide whether the parties' agreement was breached by either wife's petition seeking an arrearage or husband's unilateral reduction in support to $700 per month. Therefore, husband has not demonstrated that the trial court erred by ruling on matters previously decided.

### Spousal Support Required under Parties' Agreement

In our earlier decision, we determined that the parties' agreement defined their rights and obligations. However, we were

6

not called upon to interpret the parties' written agreement beyond the definition of "draw." In this appeal, however, the question is how the parties' oral agreement affected the other provisions concerning spousal support under their written agreement.

"Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987). "On appeal if all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court." Id. "Since the interpretation of a contract is a question of law, we are not bound by the trial court's conclusions on this issue, and we are permitted the same opportunity as the trial court to consider the contract language." Garcia Enterprises, Inc. v. Enterprise Ford Tractor, Inc., 253 Va. 104, 107, 480 S.E.2d 497, 498-99 (1997). Parties may modify a written contract by parole agreement. See Warren v. Goodrich Strip & Screen Co., 133 Va. 366, 388-89, 112 S.E. 687, 693-94 (1922).

The matter before us presents two questions: first, whether husband was barred from unilaterally reducing spousal support to $700 per month in January 1993, which was the level contemplated by the written terms of the agreement; and, second, whether he

was required to pay $2,000 per month in spousal support after he reached age sixty in July 1994 and no longer received his draw from his former law firm.

We find that husband was not barred from reducing his monthly spousal support payment to $700 according to the terms of the agreement. In her brief and at oral argument, wife admitted that she "acquiesced" in husband's proposal to pay her $2,000 per month. Indeed, her testimony in the record clearly established that she did. Mere acquiescence in accepting a lesser amount does not support the trial court's conclusion that the parties "mutually modified those portions of the Property Settlement Agreement dated January 24, 1984 which sought to set spousal support by means of a fixed formula." Acquiescence to payments in excess of that called for under the parties' agreement required no consideration on wife's part. The evidence does not support husband's assertion that wife agreed to forego litigation in exchange for the greater payment. However, nothing precludes husband from paying wife pursuant to the terms of the parties' agreement. According to the terms of the agreement, husband was required to pay $700 per month based upon his draw. Therefore, the trial court erred in finding that a spousal support arrearage began to accrue after January 1993.

We also find that the trial court erred in interpreting the parties' agreement to require spousal support payments after husband reached age sixty and no longer received his draw. In

8

pertinent part, the parties' agreement provided as follows:

> Upon Husband attaining the age of Sixty (60) years and retiring from his professional practice or employment, if spousal support has not been terminated earlier by force of the other provisions of this Agreement, the parties will negotiate in good faith, based upon the circumstances and conditions at the time, to fix the amount of spousal support the Wife is entitled to, if any.

Under this provision, the original support obligation ran only through the time husband was under age sixty and still receiving his draw. Clearly, if husband was not receiving a monthly income from Hunton & Williams, wife's spousal support was eliminated by operation of the parties' agreement. The parties also contemplated the possibility that, notwithstanding the fact that support had not otherwise terminated, wife would no longer be entitled to spousal support after husband's retirement. The agreement clearly did not extend support payments at the previous level indefinitely. While husband agreed to pay support to wife "so long as they shall both live and she shall remain unmarried," the more specific provision required renegotiation in good faith, with the possible cessation of any support, after husband reached age sixty and retired.[1] As both these criteria have now occurred, husband's obligation to pay spousal support ended.

----

[1] We previously ruled that the spousal support payment was based upon husband's draw, not his employment as an attorney. Husband's draw ended in July 1994, the same month husband turned sixty. The fact that husband did not retire from the practice of law until October 1995 does not extend the time for which spousal support payments were required to be made.

Code § 20-109 is self-executing and no longer requires that a party obtain a decree terminating spousal support when the terms of the agreement explicitly provide for termination. Under the terms of the agreement, the parties are required to renegotiate the amount of spousal support to which wife is now entitled, if any, in light of their current "circumstances and conditions." In the event they do not agree, the issue of support shall be for the court to decide.

### Attorney's Fees

The trial court awarded husband attorney's fees attributable to the first action. In the absence of a specific remand for the determination of attorney's fees, the trial court did not err in failing to award any fees attributable to the first appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 691, 479 S.E.2d 98, 98 (1996). On remand, the trial court may consider whether to award husband additional attorney's fees attributable to the proceedings in the trial court that occurred after the remand from this Court's prior decision. On remand, the trial judge shall also award husband reasonable fees for this appeal.

### Conclusion

In summary, the circuit court's decision that husband was required to pay $2,000 in monthly spousal support to wife beginning in January 1993 is reversed and the matter remanded to the trial court for further proceedings consistent with this decision. The circuit court's award of attorney's fees is

affirmed.  On remand, the circuit court may consider an additional award of attorney's fees to husband attributable to the proceedings before it and on appeal.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>