# CIRCUIT COURT OF ARLINGTON COUNTY

In re Adoption of
Jennifer Priscilla Rivera

February 13, 2002

Case No. (Chancery) 01-473

BY JUDGE WILLIAM T. NEWMAN, JR.

After full consideration of the oral arguments and legal memorandum, the Court Denies the Petition for the Adoption of Jennifer Rivera for reasons set forth below.

Under Virginia Law, the Court may not generally grant a final decree of adoption without the consent of the child's birth parents or a child placement agency. Va. Code Ann. § 63.1-219.10 (Michie 2001). In order to grant a final decree of adoption in the absence of a birth parent's consent, the court must find by clear and convincing evidence that failure to grant the petition for adoption would be detrimental to the child. Va. Code Ann. § 63.1-219.13 (Michie 2001). The Court finds that the evidence produced in this matter is insufficient to satisfy the petitioner's burden of proving that failure to grant this petition for adoption would be detrimental to Jennifer Rivera. Accordingly, the Petition is Denied.

*Background*

Eleven-year-old Jennifer Priscilla Rivera was born to the non-marital union of Lidia Rivera Kreidler, the child's mother, and Ned A. Sinkavitch, the child's natural father, on October 14, 1990. The two parents neither married nor cohabited after the child's birth. No child custody, visitation, or support orders were judicially sought and the parties have not entered into any custody or support agreements. On August 9, 1996, Lidia Rivera married Mark Thomas Kriedler, the step-father. Mr. and Mrs. Kreidler have three

children born of their marriage and now seek to have Jennifer Rivera, adopted by her step-father.

The evidence at trial established that Mr. Sinkavitch, has had very little contact with his daughter since the time of her birth, seven visits or chance meetings since 1992, and that his visitation efforts have not been thwarted by any actions of the petitioners. The evidence also established that Mr. Sinkavitch has provided minimal financial support to the child. Mr. Sinkavitch has similarly distant and strained relationships with other children of his.

The parties concur that the petitioners are suitable parents and that they have a loving home environment suitable for raising the child. Mr. Sinkavitch has not petitioned the court to alter the physical or legal custody of the child.

## Analysis

The gravamen of the conflict before the Court is whether the petitioners established by clear and convincing evidence that failure to grant the petition for adoption would be detrimental to Jennifer Rivera. In making that determination, the Court first looks to the statutory considerations mandated by the Virginia Generally Assembly and then to Virginia case law.

### A. Statutory Considerations

Under Virginia Law, no petition for adoption may be granted in absence of the written consent of the birth parent(s) or child placement agency, unless the Court determines that failure to grant the adoption petition would be contrary to the child's best interests. Va. Code Ann. § 63.1-219.10 (Michie 2001). Virginia Law further provides that failure to grant an adoption petition is contrary to a child's best when the Court determines that to do so would be detrimental to the child. Va. Code Ann. § 63.1-219.13 (Michie 2001). Virginia Code § 63.1-219.13 provides in pertinent part as follows:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interest of the child ... the court shall consider whether failure to grant the petition for adoption would be detrimental to the child. In determining whether the failure to grant the petition would be detrimental to the child, the court shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child, whether the birth parent(s)' efforts to assert parental rights were thwarted by other people, the birth parent(s)' ability to care for

the child, the age of the child, the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children, the duration and suitability of the child's present custodial environment, and the effect of a change of physical custody on the child.

The evidence in this case clearly shows that Ned Sinkavitch has made no effort to obtain physical custody of his daughter, that the petitioners have not made efforts to thwart the assertion of his parental rights, and that the quality of the relationships between Mr. Sinkavitch and his children, including Jennifer Rivera, is poor.

Counsel for the petitioners established that Mr. Sinkavitch visited with Jennifer only seven times since her birth. Two of those seven meetings were chance occurrences.

Counsel for the petitioners also established that Mr. Sinkavitch had given gifts on four separate occasions and money on two occasions.

The Court is not overly concerned by the number of gifts given to the child during her 11 years of life, because the Court recognizes that gift giving is not necessarily an essential part of the child-parent relationship. However, the Court is concerned with the infrequency of visits between Mr. Sinkavitch and the child and his lack financial support for her. Those failures on the part of Mr. Sinkavitch have clearly contributed to the poor quality of this parent-child relationship.

There is no evidence of the petitioners' thwarting Mr. Sinkavitch's efforts to assert his parental rights. Testimony at trial revealed only one occasion when Mrs. Kreidler agreed to phone Mr. Sinkavitch to set up a visitation but failed to do so.

That one occasion, in and of itself, does not lead the Court to conclude that Mrs. Kreidler or her husband have made efforts to thwart Mr. Sinkavitch's efforts to assert his parental rights.

Conversely, the evidence has also not established a lack of effort by Mr. Sinkavitch to obtain or maintain legal custody of the child, as this is the first challenge to their legal relationship. The fact that he contests the adoption is evidence of effort to maintain legal custody. Because no change in physical custody is sought in this case, Mr. Sinkavitch's ability to care for his daughter, her age, her current custodial environment, and any effect of a change in physical custody on Jennifer Rivera are irrelevant.

So what we are left with is a case of an uninvolved father who does not financially support his child. Therefore, the question becomes whether a natural father's lack of parental involvement and lack of financial support for

his child are a sufficient basis to find that a failure to grant the adoption petition would be detrimental.

## B. *Virginia Case Law*

The Virginia Court of Appeals opined in *Frye v. Spotte*, 4 Va. App. 530, 532 (1987), that an adoption over the objection of a natural parent should not be granted, except upon "clear and convincing evidence that the adoption would be in the a child's best interest and that it would be detrimental to continue the natural parent-child relationship." The court in *Frye* affirmed a trial court's grant of an adoption petition over the objection of a natural father, finding that a continued relationship between the children and their natural father would be detrimental to their well being. *Frye v. Spotte*, 4 Va. App. 530 (1987). In that case, however, there was evidence of cruelty, abandonment, and child molestation. *Id.* Those additional elements are not present in the case at bar. Petitioners have put forth no evidence of inappropriate behavior, physical or mental cruelty, mistreatment of the child, or general parental unfitness, other than a lack visitation.

The cases of *Malpass v. Morgan*, 213 Va. 293 (1972); *Ward v. Faw*, 219 Va. 1120 (1970); *Cunningham v. Gray*, 221 Va. 792 (1981); and *Jolliff v. Crabtree*, 223 Va. 654 (1983), have facts more akin to those of the case at bar. In each of those cases, the Virginia Court of Appeals reversed circuit court decisions granting adoptions over the objection of a natural parent. In *Malpass*, the Court of Appeals reversed a circuit court's grant of an adoption petition, finding insufficient evidence of the detrimental effect of a continued parent-child relationship. *Malpass v. Morgan*, 213 Va. 293 (1972). In that case, the petitioner's alleged that the natural father only saw the children occasionally and provided no financial support. *Id.*

In *Ward*, the Court of Appeals reversed the grant of an adoption petition after finding that evidence of detrimental effect of a continued parent-child relationship was insufficient to order an adoption as a matter of law. *Ward v. Faw*, 219 Va. 1120 (1970). The evidence in *Ward* established the child and natural father were essentially strangers, while the child had a strong and loving relationship with the petitioning step-father. *Id.*

In *Cunningham*, the Court of Appeals reversed the grant of an adoption petition for insufficient evidence of the detrimental effect of a continued child-parent relationship. *Cunningham v. Gray*, 221 Va. 792 (1981). The evidence in that case showed that the father had only seen the child once between 1973 and 1978, when the petition was filed. *Id.* He paid no child support, was often unemployed, and was occasionally violent. *Id.*

In *Jolliff,* a trial court granted an adoption petition on the ground that no relationship existed between the natural parent and child. *Jolliff v. Crabtree,* 223 Va. 654 (1983). He paid no support and had not seen the child in eight years. *Id.* The Court of Appeals reversed on the ground that the petitioners had not established their burden of proving the detrimental effect of a continued relationship. *Id.*

More recent cases have been cited by the petitioners, which, they argue, were decided under a different standard because the relevant Virginia Adoption Statute was recently amended. However, the new statute is virtually identical to the former statute and should therefore be applied in the same manner. Of the cases that the petitioner relies upon, *Reed v. Hersam,* Record No. 0466-01-4, Va. Ct. App. (2001); *Peters v. Hagerman,* 1999 WL 1129662 (Va. App. 1999); *Mills v. Mills,* Record No. 0884-99-4 (Va. App. 2000); and *Knight v. Laney,* Record No. 1190-95-1 (Va. App. 1996), three of them granted adoptions over the objections of natural parents who were convicted and incarcerated felons[1] and one case involved a natural mother diagnosed and suffering from paranoid schizophrenia.[2] Each of those cases involved natural parents who had no personal relationship and provided little financial support, as is the case in the pending adoption petition. However, evidence in these cases also established some additional facts that the courts relied on in

---

[1] *Reed v. Hersam*: The objecting natural father in *Reed* was incarcerated and evidence showed that he was involved in gambling, illegal drug consumption, and gang activity inside prison. The child's mother testified that the child was exposed to that criminal activity through letters and inappropriate discussions during visits to the prison. *Reed v. Hersam,* Record No. 0466-01-4 (Va. App. 2001).

*Peters v. Hagerman*: The objecting father in *Peters* was incarcerated on federal and state drug and gun charges. He was sentenced to 47 years in prison and wanted to petition for physical custody of the child if he were released in time to do so. *Peters v. Hagerman,* 1999 WL 1129662 (Va. App. 2001).

*Knight v. Laney*: The objecting mother in *Knight* was incarcerated on drug charges. (She appealed the entry of an interlocutory order). Her child was taken from her after being born addicted to cocaine. *Knight v. Laney,* Record No. 1190-95-1 (Va. App. 1996).

[2] *Mills v. Mills*: The objecting mother in *Mills* suffered from mental illness. That mental illness precipitated her child's placement with paternal relatives. She was diagnosed with paranoid schizophrenia and placed on medication, but the evidence showed that she continued to suffer mental impairment. Despite impairment, she sought to obtain physical custody of the child. *Mills v. Mills,* Record No. 0884-99-4 (Va. App. 2000).

evaluating the fitness of the parents and the possible detriment to the children of continued relations with those parents.

## Conclusion

No case cited by either party affirmed the grant of an adoption petition for failure to financial support and spend time with a child alone. Those are the only relevant facts established in this case and this Court holds they are insufficient to satisfy the petitioners' burden. Accordingly, the petition for the adoption of Jennifer Rivera is denied.